## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-194

Vivos Therapeutics, Inc.,

    Plaintiff,

  v.

Dr. Gurdev Dave Singh, and Dr. Rod Willey,

    Defendants.

## COMPLAINT

Plaintiff Vivos Therapeutics, Inc. ("Vivos") brings the following Complaint against Defendants Dr. Gurdev Dave Singh ("Singh") and Dr. Rod Willey ("Willey") due to their misappropriation of Vivos' confidential trade secrets and breach of non-competition and non-solicitation, and states as follows:

### INTRODUCTION

1.    Singh, a terminated former Vivos employee, officer, and director, has misappropriated Vivos' confidential trade secrets to perform the same type of work he did at Vivos with a new entity and competitor.

2.    Singh had agreed to not compete with Vivos, not solicit or accept business from or otherwise divert any customers or prospective customers away from Vivos.

3.    Singh and Willey have partnered to create Koala Plus, offering a comprehensive airway, breathing and sleep care to patients in need and training for their purportedly new method, that upon information and belief, is based on the trade secrets of Vivos and directly competes with Vivos.

4. Willey has assisted Singh in creating this competitive business, misappropriating Vivos' trade secrets such as its research and data, intellectual property, and devices and methodology, despite Singh's agreement to not compete.

5. Vivos seeks immediate and permanent injunctive relief to prevent Singh's and Willey's continued illegal and improper use of Vivos' confidential trade secrets to compete directly with Vivos, as well as monetary damages.

6. Vivos also seeks immediate and permanent injunctive relief to prevent Singh's and Willey's competing business, in violation of the restrictive covenants.

## PARTIES

7. Vivos Therapeutics, Inc. is a company incorporated in Delaware, with its principal place of business located in Colorado.

8. Upon information and belief, Singh is a resident of North Carolina.

9. Upon information and belief, Willey is a resident of Illinois.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

11. Venue is proper in this court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Vivos' claims occurred in Colorado.

12. This Court has personal jurisdiction over Singh because Singh has misappropriated and misused Colorado-based trade secrets that he learned and possesses as a result of his employment with a Colorado-based company. Singh has marketed and advertised his new business and offerings that misappropriate Vivos' trade secrets into Colorado.

13. This Court has personal jurisdiction over Singh because he has consented to the jurisdiction of this Court pursuant to the Amended and Restated Executive Employment Agreement ("Amended Employment Agreement"), which provides any disputes or controversy arising out of the Amended Employment Agreement shall be settled in accordance with the laws of the State of Colorado in Denver, Colorado, and that any injunctive relief may be filed in court. *See* Exhibit 2, ¶ 9.

14. This Court has personal jurisdiction over Willey because Willey has misappropriated and misused a Colorado-based trade secret that he learned and illegally possesses as a result of learning of the trade secrets from Singh and aiding Singh to illegally and improperly use Vivos' trade secrets to create a business that competes with Vivos, offering similar products and services in its trainings based upon the trade secrets.

15. This Court has personal jurisdiction over Willey as the claims against him arise from the same transactions and occurrences as the illegal and improper acts and breaches of Singh.

16. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because (a) the parties are citizens of different states, and (b) the amount in controversy exceeds $75,000.

## FACTUAL ALLEGATIONS

*Vivos' Business*

17. Vivos is a medical device technology company focused on the development and commercialization of innovative solutions for patients with sleep-disordered breathing, including obstructive sleep apnea, that develops and markets a number of specially designed, customized and pre-formed oral appliances, which are integrated into a patient-specific, multi-disciplinary clinical protocol that is used by trained dental and medical providers.

3

18. Vivos is focused on a patented oral appliance technology and related treatments and training called The Vivos Method.

19. Vivos was originally organized on July 7, 2016, as Corrective BioTechnologies, Inc.

20. Subsequently, Vivos changed its name to Vivos BioTechnologies, Inc. on February 2, 2018, then to Vivos Therapeutics, Inc. on March 5, 2018.

21. Vivos maintains an office in the state of Colorado.

22. Vivos believes that its proprietary oral appliances and associated protocols represent a significant improvement in the treatment of mild to moderate obstructive sleep apnea ("OSA") versus other available treatments or protocols. Vivos refers to this treatment as "The Vivos Method."

23. The Vivos Method is an advanced therapeutic protocol, which often combines the use of customized oral appliance specifications and proprietary clinical protocols developed by the company and prescribed by specially trained dentists in cooperation with the medical colleagues.

24. The Vivos Method is a non-surgical, non-invasive, and cost-effective treatment for people with dentofacial abnormalities and/or mild to moderate OSA and snoring in adults.

25. Vivos trains its providers in The Vivos Method to treat patients.

26. As part of its business, Vivos has relationships with a vast network of dental and medical providers who offer Vivos' appliances to patients.

27. Vivos trains providers on various aspects of the Vivos Method, which includes training in a highly personalized, deep immersion workshop format that provides VIPs and providers access to a team who is dedicated to creating a successful integrated practice.

28. Vivos' program to train dentists and offer them other value-added services in connection with their ordering and use of The Vivos Method for patients is called the Vivos Integrated Practice ("VIP") program.

29. Vivos has integrated practices and providers in the states of Colorado and Illinois.

30. Key topics covered in Vivos' training provided in connection with the Vivos Method include case selection, clinical diagnosis, appliance design, adjunctive therapies, instructions on ordering Vivos and third-party products, guidance on pricing, instruction on insurance reimbursement protocols and interacting with Vivos' proprietary software system and the many features within the Vivos Method.

31. Vivos also offers other products and services to VIPs, including (i) SleepImage home sleep apnea test rings ("SleepImage"), which can be leased to VIPs for use with patients; (ii) training and continuing education at the Vivos Institute training center, (iii) the Billing Intelligence Service ("BIS"), a subscription-based billing solution for VIPs, (iv) the Company's Medical Integration Division ("MID"), which manages independent medical practices under management and development agreements and (v) MyoCorrect, a service through which VIPs can provide orofacial myofunctional therapy ("OMT") to patients via telemedicine technology ("MyoCorrect").

32. Vivos takes significant steps to protect its trade secrets, including non-disclosure and confidentiality agreements with, including but not limited to, treaters, providers, manufacturers, and policies in the Employee Handbook, including confidentiality.

*Vivos Acquires Singh's Business*

33. In August and September 2016, Vivos completed, by way of a share exchange, an agreement to acquire the business and operations, including its trade secrets and intellectual property, of BioModeling Solutions, Inc. ("BMS").

34. At the time of the acquisition, Singh served as the founder, majority shareholder, and Chief Executive Officer of BMS.

35. BMS was engaged in the manufacture and sale of the patented DNA appliance and U.S. Food and Drug Administration ("FDA") cleared MRNA appliance, together with other proprietary treatment protocols that would ultimately form the basis of the Vivos Method.

36. Vivos acquired this proprietary information as part of the transaction and directly paid Singh $5,000,000 for these rights. Additionally, Vivos granted Singh a significant portion of the initial founder's stock, worth approximately $20 million at the time of Vivos' December 2020 IPO, making him the single largest shareholder.

*Singh's Employment Agreements with Vivos*

37. Singh has held multiple positions at Vivos, including Chief Medical Officer ("CMO"), President, and Director.

38. On May 6, 2017, Singh executed his initial Employment Agreement with the Vivos as CMO ("2017 Employment Agreement"). *See* Exhibit 1.

39. The 2017 Employment Agreement included Vivos' Non-Disclosure and Invention and Copyright Assignment Agreement. *See* Exhibit 1, ¶ 8 and Addendum D. Singh's employment was subject to his agreement to be bound by, and to observe, the Non-Disclosure and Invention and Copyright Assignment Agreement, both during and after his employment. *Id.* at ¶ 8.

40. On October 9, 2020, Singh executed an Amended and Restated Executive Employment Agreement ("Amended Employment Agreement"). *See* Exhibit 2.

41. The Amended Employment Agreement continued to employ Singh as the Founder and CMO. *Id.* at ¶ 1(a).

42. The Amended Employment Agreement contains the restrictive covenants of non-competition and non-solicitation, to protect Vivos' "legitimate business interests, including but not limited to confidential or trade secret business information, relationships with customers, the goodwill of the Company, and loyalty to Company." *See* Exhibit 2, ¶ 4.

43. The Amended Employment Agreement "constitutes the full understanding and entire employment agreement of the Parties, and supersedes and is in lieu of any and all other understandings or agreements between" Vivos and Singh, "including the 2017 Agreement" other than that which is specifically set forth in the Amended Employment Agreement. *Id.* at ¶ 8.

44. The Amended Employment Agreement included any prior intellectual property, non-competition, non-solicitation and non-disclosure covenants or agreements between Vivos and Singh, and incorporated Addendum D of the 2017 Employment Agreement and it was made a part of the Amended Employment Agreement. *Id.* at ¶¶ 4(g) and 8.

45. Singh also agreed to the non-competition covenant, which states that for a period of twenty-four (24) months after the date of termination, Singh "will not, directly or indirectly, for Executive's own account, or on behalf of any other person, company or entity (and whether as an employee, director, officer, shareholder, associate, partner, manager, agent, advisor, independent contractor, consultant or otherwise), engage in a Competitive Business within the Restricted Area." *Id.* at ¶ 4(a).

46. A Competitive Business is "any business whose products, services, or activities compete in whole or in part with the products services, or activities of Company, or planned products, services, or activities in which Executive was involved, during Executive's employment with Company." *Id*. at ¶ 4(a)(i).

47. The term "Restricted Area" is defined as "the States of Colorado and New Mexico and any other state within the United States in which Vivos has maintained an office or Vivos Integrated Provider located in that state in the twelve (12) month period preceding the Termination Date." *Id.* at ¶ 4(a)(ii).

48. Singh also agreed to non-solicitation in the Amended Employment Agreement. *Id.* at ¶ 4(b).

49. Singh agreed that, for a period of twenty four (24) months after his termination, he

> will not, either personally or as an employee, agent, director, officer, shareholder, associate, partner, manager, agent, advisor, independent contractor, proprietor, consultant or otherwise: . . .
>
> > (i) directly or indirectly solicit or accept business from or otherwise divert from Company any customers or prospective customers of Company for products of services that are similar to or competitive with products or services offered or sold by Company, or planned products, services, or activities in which Executive was involved, during Executive's employment with Company;
> >
> > (ii) directly or indirectly attempt to attract any actual or prospective customer, supplier, or vendor away from Company or use information regarding Company's customers, suppliers, or vendors in any way which would detrimentally affect Company; . . . and
> >
> > (iv) undertake, or engage in, any employment or business activities involving the disclosure or use of Company's intellectual property, trade secrets, or Confidential Information.

*Id.* at ¶ 4(b)(iv).

50. Singh also agreed to the tolling of the restrictive covenants, that should he "violate any of the terms of Section 4 of this Agreement, the duration of the restrictions contained in Section 4 shall be extended by the duration of time during which Executive was in violation of the same." *Id.* at ¶ 4(d).

51. Singh was involved in the research and development of Vivos' current products and services, along with next generation versions of the products and services.

52. As CMO, Singh employed individuals on his team to work on the research and development of Vivos' products and services.

53. Singh's work gave him access to, and knowledge of, all of Vivos' products and services and the research and development of the products and services.

54. On July 8, 2021, Singh requested a sabbatical from his role as CMO.

55. On September 22, 2021, Singh executed a Sabbatical Agreement. *See* Exhibit 3.

56. The Sabbatical Agreement did not amend any prior intellectual property, non-competition, non-solicitation, and non-disclosure covenants or agreements between Vivos and Singh. *See generally id.*

57. Singh was terminated for cause on March 1, 2022.

***Koala Plus***

58. Koala Plus is a business formed by Singh and Willey, "to bring comprehensive airway, breathing and sleep care to patients in need" through a residency program, training, and

back-office support.[1]  Koala Plus promotes itself as a "New Platform for Craniofacial & Dental Sleep Medicine."

59. The announcement of the new business and services marketed Koala Plus as "merging the world-renowned research of Dr. Singh and the clinical expertise of Dr. Willey" to offer "doctors, dentists, orthodontists and their teams an a la carte menu of services and training sessions for the treatment of airway, breathing, sleep and TMD issues."

60. In approximately December 2012, Koala Plus announced the residency program under the leadership of Singh and Willey, combining the research and protocols developed by Singh with Willey's services.



---

[1] https://koalaplus.org/about

61. In addition to the residency program, Koala Plus also offers back-office support, including administrative and medical billing services, offered through customized packages.

62. Koala Plus also offers "educational training systems" that "are developed for doctors, clinical assistants, and business managers" to "offer a transdisciplinary approach" as it believes the "key to successful management of sleep disordered breathing treatment is an integrated" approach.[2]

63. Koala Plus and its offerings are nearly the same as those offered by Vivos – training dentists and offering them other value-added services in connection with The Vivos Method, providing training and continuing education at the Vivos Institute training center, billing services, managing independent medical practices, and training in a highly personalized, deep immersion workshop format that provides access to a team who is dedicated to creating a successful integrated practice.

*Misappropriation of Trade Secrets and Breach of Contract*

64. Koala Plus's services and offerings compete, in whole and in part, with Vivos' products, services, and activities.

65. Koala Plus integrates Singh's knowledge of Vivos' intellectual property, trade secrets, and confidential information.

66. Koala Plus integrates the trade secrets that were acquired from Singh, in which he was paid valuable consideration for such trade secrets.

---

[2] https://koalaplus.org/whatweoffer

67. Singh, working with Willey, illegally and improperly uses Vivos' intellectual property, trade secrets, and confidential information, to develop and offer the services, products, and activities of Koala Plus.

68. Koala Plus has not limited its services, products, or activities to certain geographical locations.

69. Koala Plus has not limited its marketing or advertisements to any geographical location.

70. Koala Plus has not limited its trainings and residency programs and its attendees, or its clients and customers, to any geographical location.

71. Upon information and belief, Koala Plus's activities, trainings, products, and services integrates Singh's knowledge gained during his employment with Vivos, including Vivos' intellectual property, trade secrets, and confidential information.

72. Upon information and belief, Willey has worked with and aided Singh in integrating Vivos' trade secrets into Koala Plus.

73. Upon information and belief, Willey has illegally and improperly used Vivos' trade secrets to form Koala Plus, and its activities, trainings, products, and services, including the residency program, methods it trains on, and any clinical learning taught.

74. On December 15, 2022, a cease-and-desist letter was issued to Singh. *See* Exhibit 4.

75. To date, Singh has not responded to the cease-and-desist letter.

76. On December 15, 2022, a cease-and-desist letter was issued to Willey. *See* Exhibit 5.

77. To date, Willey has not responded to the cease-and-desist letter.

78. Koala Plus continues to operate, with no changes.

79. Singh remains a part of Koala Plus, a competitor of Vivos which targets the same customers as Vivos.

80. Singh's and Willey's illegal and improper use of Vivos' trade secrets have adversely affected and significantly damaged Vivos' interests and business.

81. Thus, Vivos requires an immediate and permanent injunction preventing Singh from breaching the Amended Employment Agreement and restrictive covenants, and preventing Singh's and Willey's continued illegal and improper use of Vivos' trade secrets.

## COUNT 1
### Breach of Contract – Restrictive Covenants
### (Singh)

82. Vivos realleges and incorporates all prior paragraphs as if alleged herein.

83. The 2017 Agreement and the Amended Employment Agreement constitute valid and enforceable contracts between Vivos and Singh.

84. Under these agreements, Singh received adequate consideration.

85. In the agreements, Singh agreed to non-competition and non-solicitation with Vivos for a period of twenty-four months after his termination.

86. Vivos complied with all of its obligations under both agreements.

87. Singh breached the non-competition and non-solicitation agreements when he formed Koala Plus with Willey, offering services, products, and activities that compete with Vivos and targets the same market as Vivos, and that solicits or otherwise accepts business from Vivos' clients and customers, therefore diverting customers and prospective customers from Vivos.

88. Singh breached the Amended Employment Agreement and Non-Disclosure and Invention and Copyright Assignment Agreement when he improperly and illegally shared and misappropriated Vivos' trade secrets.

89. Singh's breaches have caused Vivos material harm.

90. Singh's breaches have irreparably damaged Vivos in an amount to be determined at trial.

## COUNT 2
### Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836
### (Singh and Willey)

91. Vivos realleges and incorporates all prior paragraphs of this Complaint as if alleged herein.

92. Vivos possessed its intellectual property, inventions, methodologies, and confidential information of its business, treatments, and methods, which are valid trade secrets.

93. Vivos' proprietary information and intellectual property are trade secrets that relate to Vivos' specially designed, customized and pre-formed oral appliances and treatment that are used in, or intended for use in, interstate or foreign commerce.

94. Singh acquired Vivos' proprietary information and intellectual property, and other trade secrets, through his employment with Vivos.

95. Singh understood that Vivos' proprietary information, intellectual property, and trade secrets were confidential and could not be disclosed or used for his benefit.

96. Singh had a duty to maintain Vivos' proprietary information, intellectual property, and trade secrets as confidential.

97. Singh disclosed the trade secrets to Willey to form a new business, Koala Plus, that competes with Vivos.

98. Singh disclosed the trade secrets to Willey, and together they developed the products, services, and activities that are offered by Koala Plus.

99. Willey formed a new business with Singh, to integrate Singh's knowledge of the trade secrets he gained from his employment with Vivos with his own clinical knowledge, into the new business to share with other dental and medical practitioners through a residency program and other trainings, and to offer other products, services, and activities that compete with Vivos.

100. Singh knew or had reason to know that he had acquired Vivos' proprietary information and intellectual property and that such were trade secrets of Vivos.

101. Willey knew or had reason to know that he had acquired Vivos' proprietary information and intellectual property and that such were trade secrets of Vivos.

102. Singh never had authorization to disclose these trade secrets, and signed agreements providing that he would not disclose the intellectual property, confidential information, and trade secrets of Vivos.

103. Even after Vivos issued cease-and-desist letters, Singh and Willey refused to comply or even respond, and instead continued to operate their new business competing with Vivos and misappropriating Vivos' trade secrets.

104. Singh's illegal and improper use of Vivos' trade secrets has irreparably damaged Vivos in an amount to be determined at trial.

## COUNT 3
### Violation of the Colorado Trade Secrets Act
### (Singh and Willey)

105. Vivos realleges and incorporates all prior paragraphs of the Complaint as if alleged herein.

106. Vivos possessed its intellectual property, inventions, methodologies, and confidential information of its business, treatments, and methods, which are valid trade secrets.

107. Singh acquired Vivos' trade secrets through his employment with Vivos.

108. Singh has a duty to maintain the secrecy of Vivos' trade secrets.

109. Singh owes a duty to Vivos to maintain the secrecy of Vivos' trade secrets as a former executive and officer of Vivos, and as agreed upon in his employment agreements.

110. Willey acquired Vivos' trade secrets through Singh's illegal and improper sharing of Vivos' trade secrets.

111. Vivos' trade secrets were disclosed without its consent.

112. Singh used Vivos' trade secrets without Vivos' consent when he disclosed them to Willey and used them to build a new business that integrates the intellectual property, inventions, methodologies, and confidential information he learned from Vivos.

113. Willey formed a new business with Singh, specifically to integrate Vivos' intellectual property, inventions, methodologies, and confidential information into products, services, and other activities of Koala Plus, which competes with Vivos.

114. Singh knew or had reason to know that he had acquired Vivos' proprietary information and intellectual property and that such were trade secrets of Vivos.

115. Willey knew or had reason to know that he had acquired Vivos' proprietary information and intellectual property and that such were trade secrets of Vivos, and that Singh had a duty to Vivos to maintain the secrecy of the trade secrets and that Singh did not have Vivos' consent to disclose the trade secrets.

116. Singh knew, or should have known, that he did not have authorization to disclose these trade secrets.

117. Willey knew, or should have known, that he does not have authorization to disclose these trade secrets.

118. Singh's and Willey's illegal and improper use of Vivos' trade secrets have irreparably damaged Vivos in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Vivos demands judgment as follows:

A. For an order enjoining Singh from disclosing Vivos' trade secrets;

B. For an order enjoining Willey from disclosing Vivos' trade secrets;

C. For an order enjoining Singh from competing with Vivos' for a period of twenty-four months, in addition to the tolling period;

D. For an order enjoining Singh from soliciting or accepting business, or otherwise divert from Vivos, from Vivos' customers or prospective customers, for a period of twenty-four months, in addition to the tolling period;

E. For an order finding in favor of Vivos on all counts asserted herein;

F. For an order declaring that Singh's conduct violates the statutes referenced herein;

G. For an order declaring that Willey's conduct violates the statutes referenced herein;

    H. For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

    I. For an order awarding Vivos its reasonable attorneys' fees and expenses and costs of suit;

    J. For prejudgment interest on all amounts awarded; and

    K. For any other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: January 23, 2023.

                                                                                   Respectfully submitted,

*/s/ Michael A. Freimann*
Michael A. Freimann
Mamie Ling
Armstrong Teasdale LLP
4643 South Ulster Street
Suite 800
Denver, CO 80237
Telephone: 720.200.0676
Facsimile: 720.200.0679
mfreimann@atllp.com
mling@atllp.com

*Attorneys for Plaintiff Vivos Therapeutics, Inc.*