IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-194

Vivos Therapeutics, Inc.,

    Plaintiff,

v.

Dr. Gurdev Dave Singh, and Dr. Rod Willey,

    Defendants.

**EMERGENCY MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

Plaintiff Vivos Therapeutics, Inc. ("Vivos"), through undersigned counsel, brings the following Emergency Motion for *Ex Parte* Temporary Restraining Order ("TRO") against Defendants Dr. Gurdev Dave Singh ("Singh") and Dr. Rod Willey ("Willey") to immediately restrain them from breaching the restrictive covenants and misappropriating Vivos' confidential trade secrets, and states as follows:

**Certificate of Conferral:** Pursuant to D.C.COLO.LCivR 7.1(a), counsel for Vivos attempted to confer with Defendants when each was sent a cease-and-desist letter on December 15, 2022. Both have failed to respond. Further, undersigned counsel has taken additional efforts to provide notice to Defendants. *See* Exhibit 8.

## INTRODUCTION

Singh, the former Chief Medical Officer ("CMO") whom Vivos terminated for cause, and Willey are illegally and improperly using Vivos' trade secrets of proprietary and confidential information related to its devices and methodologies. Singh and Willey used the trade secrets to

1

form a new, competitive business. Singh has caused irreparable and immediate harm by being a part of a competitive business which targets Vivos' customers. Singh and Willey have caused irreparable and immediate harm by misappropriating Vivos' trade secrets. Further, Singh and Willey will cause even further irreparable and immediate harm through an upcoming January 30, 2023 conference, where it is believed Singh and Willey will conduct trainings that integrate Vivos' trade secrets. Damages will only grow should Defendants' illegal and improper conduct continue. Vivos requests an *ex parte* TRO barring Singh and Willey from further using Vivos' trade secrets, and barring Singh from breaching the restrictive covenants of the employment agreements.

### FACTUAL ALLEGATIONS

**A.  Vivos' Business**

Vivos is a medical device technology company focused on the development and commercialization of innovative solutions for patients with sleep-disordered breathing, including obstructive sleep apnea ("OSA"), integrated into a patient-specific, multi-disciplinary clinical protocol used by trained providers. Exhibit 1, R. Kirk Huntsman Declaration, ¶ 3.

Vivos' business is focused on The Vivos Method, a patented oral appliance technology and related treatments and training. *Id.* at ¶ 4. The Vivos Method, an advanced therapeutic protocol, represents the first non-surgical, non-invasive, and cost-effective treatment for people with dentofacial abnormalities and/or mild to moderate OSA and snoring in adults. *Id.* at ¶ 6. The Vivos Method often combines the use of customized oral appliance specifications and proprietary clinical protocols developed by Vivos and prescribed by specially trained dentists in cooperation with medical colleagues. *Id*. at ¶ 7.

Vivos' has relationships with a vast network of dental and medical providers. *Id*. at ¶ 8. The Vivos Integrated Practice ("VIP") program trains dentists in The Vivos Method and offers them other value-added services. *Id*. at ¶ 9. Key training topics include clinical diagnosis, adjunctive therapies, instructions on ordering Vivos and third-party products, guidance on pricing, instruction on insurance reimbursement protocols and interacting with Vivos' proprietary software system and the many features within the Vivos Method. *Id*.

Vivos also offers other products and services to VIPs, including (i) training and continuing education at the Vivos Institute training center, (ii) the Billing Intelligence Service ("BIS"), a subscription-based billing solution for VIPs, and (iii) the Company's Medical Integration Division ("MID"), which manages independent medical practices. *Id*. at ¶ 11.

**B.     Protection of Confidential Trade Secrets**

Vivos maintains its products and methods, and all research and development ("R&D"), as confidential trade secrets and are not disclosed to the public. *Id*. at ¶ 12. Vivos has taken significant steps to prohibit its innovative and proprietary methods and appliances from disclosure to protect its trade secret status. *Id*. at ¶ 13. Vivos has instituted stringent employee policies to protect disclosure of its confidential trade secrets, including a detailed Employee Handbook, policies that prohibit the use or disclosure of confidential information, explicit confidentiality policies, and a Conflicts of Interest policy. *Id*. at ¶¶ 15-17.

> The Confidential Information Policy states, among other provisions, the following:
>
> The protection of confidential business information and trade secrets is vital to the interests and success of Vivos Therapeutics. Confidential information is any and all information disclosed to or known by you because of employment with the Company that is not generally known to people outside the Company about its business.

*Id*. at ¶ 18. An employee who improperly uses or discloses trade secrets or confidential business information will be subject to disciplinary action, termination, or legal action. *Id*. at ¶ 19. Singh agreed to the terms of the Employee handbook as a condition of his employment. *Id*. at ¶ 20.

Vivos requires VIP dentists to sign strict confidentiality agreements regarding intellectual property. *Id*. at ¶ 21. Vivos' trainings and classes are taught through its proprietary and password protected systems or at an authorized Vivos Institute Facility where access is limited to qualified providers. *Id*. at ¶ 22. Vivos further ensures that all production and manufacturing labs are under confidentiality and non-disclosure agreements. *Id*. at ¶ 23. Vivos requires its employees to agree to and sign a Non-Disclosure and Invention and Copyright Assignment Agreement ("NDA"). *Id*. at ¶ 24. As a condition of his employment, Singh agreed to the terms of the NDA. *Id*. at ¶ 25.

**C.     Singh's Employment with Vivos**

In August and September 2016, Vivos acquired BioModeling Solutions, Inc. ("BMS"), where Singh served as the founder, majority shareholder, and Chief Executive Officer. *Id*. at ¶ 26-27. BMS was engaged in the manufacture and sale of the patented DNA appliance and U.S. Food and Drug Administration cleared MRNA appliance. Together with other proprietary treatment protocols, this would ultimately form the basis of The Vivos Method. *Id*. at ¶ 28. Vivos acquired this proprietary information and directly paid Singh for these rights. *Id*. at ¶ 29.

On May 6, 2017, Singh, represented by his counsel, executed an Employment Agreement with Vivos ("2017 Agreement").  *See* Exhibit 2; *see also* Exh. 1, ¶ 31. Singh's employment was subject to Vivos' NDA, which was included in the 2017 Agreement. *See* Exh. 2, ¶ 8 and Addendum D; *see also* Exh. 1, ¶ 31.

On October 9, 2020, Singh, acting upon the advice of his own independent counsel, executed an Amended and Restated Executive Employment Agreement ("Amended Employment Agreement"), which incorporated the NDA. *See* Exhibit 3; *see also* Exh. 1, ¶ 32. The Amended Employment Agreement contains the non-competition and non-solicitation covenants to protect Vivos' "confidential or trade secret business information, relationships with customers, the goodwill of the Company, and loyalty to Company." *See* Exh. 3, ¶ 4.

The non-competition covenant states that for twenty-four (24) months after the termination, Singh "will not, directly or indirectly, for Executive's own account or on behalf of any other person, company or entity . . . engage in a Competitive Business within the Restricted Area." *Id.* at ¶ 4(a). A Competitive Business is any "whose products, services, or activities compete in whole or in part with the products services, or activities of Company, or planned products, services, or activities in which Executive was involved, during Executive's employment with Company." *Id*. at ¶ 4(a)(i). The "Restricted Area" is "the States of Colorado and New Mexico and any other state . . . in which Vivos has maintained an office or Vivos Integrated Provider . . . in the twelve (12) month period preceding the Termination Date." *Id.* at ¶ 4(a)(ii).

Singh also agreed to the non-solicitation covenant, which provided that for twenty-four (24) months after his termination, Singh

> will not, either personally or as an employee, agent, director, officer, shareholder, associate, partner, manager, agent, advisor, independent contractor, proprietor, consultant or otherwise: . . .
>
> (i) directly or indirectly solicit or accept business from or otherwise divert from Company any customers or prospective customers of Company for products of services that are similar to or competitive with products or services offered or sold by Company . . . ,

> (ii) directly or indirectly attempt to attract any actual or prospective customer, supplier, or vendor away from Company or use information regarding Company's customers, suppliers, or vendors in any way which would detrimentally affect Company; . . . and
>
> (iv) undertake, or engage in, any employment or business activities involving the disclosure or use of Company's intellectual property, trade secrets, or Confidential Information.

*Id.* at ¶ 4(b)(iv).

Singh has knowledge of Vivos' products and services, current and next generation. Singh was involved in the R&D of Vivos' current, products and services, along with the next generation versions. Exh. 1, ¶ 33. Singh actively employed individuals on his team to work on the R&D of Vivos' products and services. *Id.* at ¶ 34.

### D.  New Business and Improper Conduct of Singh and Willey

On March 1, 2022, Vivos terminated Singh for cause. *Id.* at ¶ 35. In December 2022, Vivos learned Singh had formed Koala Plus with Willey to train dental and medical professionals in craniofacial and dental sleep medicine. *Id*. at ¶ 36. Koala Plus trains dentists and medical practitioners on the methods and treatments developed by Vivos. *Id.* at ¶¶ 37-38. Koala Plus offers "an a la carte menu of services and training sessions for the treatment of airway, breathing, sleep and TMD issues" including back-office support such as administrative and medical billing services, offered through customized packages. *See* Exhibit 4; Exhibit 5, pp. 9-10.

Singh and Willey formed Koala Plus to bring comprehensive airway, breathing and sleep care to patients in need. *See* Exh. 5, p. 1. Singh will share "his years of knowledge and research in the Koala Plus Residency Program." *Id.* Singh and Willey developed a curriculum and methods based on the proprietary and confidential information developed at, and acquired by, Vivos to provide a residency program, training to dental and medical practitioners, and other services and

6

products. Exh. 1 at ¶¶ 39-40. As such, Willey has learned of Vivos' trade secrets and with Singh, has used these trade secrets to develop Koala Plus.

Singh's and Willey's illegal and improper use of Vivos' trade secrets has adversely affected and significantly damaged Vivos' business. Every training and service of Koala Plus, that is based upon Vivos' trade secrets, is an improper and illegal misappropriation of Vivos' trade secrets. Singh has no authority, nor Vivos' consent, to share Vivos' trade secrets, and he knew or should have known he had no authority or consent. *Id.* at ¶ 42. Singh owes a duty to Vivos to maintain confidentiality of Vivos' trade secrets. Willey knew or should have known that Singh did not have Vivos' consent to disclose or use Vivos' trade secrets.

Even after Singh and Willey were sent cease-and-desist letters on December 15, 2022, both have persisted in continuing Koala Plus. *Id.* at ¶ 40; *see also* Exhibits 6, 7. Singh and Willey knowingly and intentionally caused damage and irreparable harm to Vivos. Thus, Vivos requires an immediate and permanent injunction preventing Singh's and Willey's continued illegal and improper use of Vivos' trade secrets.

Furthermore, Singh agreed to non-competition and non-solicitation covenants. *See* Exh. 3, ¶ 4. Despite this, Singh formed and developed a competitive business. Singh is directly involved in Koala Plus, which solicits and accepts business from Vivos' clients and customers, therefore diverting customers and prospective customers from Vivos. Further, Singh's engagement and involvement in Koala Plus's activities involves the disclosure of Vivos' trade secrets. Singh has intentionally breached the restrictive covenants of non-competition and non-solicitation of the employment agreements. Singh's breaches have caused damage and irreparable harm to Vivos.

## ARGUMENT

Vivos seeks a TRO to prevent Singh and Willey from further misappropriating Vivos' trade secrets and Singh from competing with Vivos and soliciting its customers. First, because Vivos will suffer irreparable harm, Vivos may proceed with this Motion *ex parte*. Second, Vivos can establish each of the elements necessary for a TRO. Third, this Court should not require Vivos to post a security or bond because Defendants will not suffer any harm should this Court enjoin them.

**A.   This Court should issue an *ex parte* TRO to protect Vivos from irreparable injury.**

Vivos will suffer irreparable harm absent an *ex parte* TRO. Under Fed. R. Civ. P. 65(b)(1), "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if the movant presents

> (A.)   specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B.)   the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*See also Complete Fire Prot., Inc. v. Kolman,* No. 19-CV-1134-WJM-STV, 2019 WL 1755280, at *1 (D. Colo. Apr. 19, 2019) (issuing *ex parte* TRO to enjoin former employee from misappropriating trade secrets he received while still employed).

Both conditions have been met. Huntsman set forth specific facts in his declaration showing that Vivos will suffer immediate and irreparable injury, loss, and damage before Singh and Willey can be heard in opposition. *See* Exhibit 1, at ¶¶ 40, 43-46. Singh and Willey will be holding a conference on January 30, 2023 that directly competes with Vivos and integrates Vivos' trade secrets, and to be shared with the participants. Once this information is released, there is no way for Vivos to claw it back and prevent the irreparable harm.

8

Singh and Willey have misappropriated Vivos' trade secrets to build a business that offers a residency program, trainings, an a la carte of services, and other activities – the same of which Vivos provides – and target Vivos' customers and clients. Further, Singh persists on competing with Vivos despite the binding contracts. Singh and Willey will continue to profit off the misappropriation of Vivos' trade secrets and business in violation of Singh's employment agreements. These illegal and improper acts erode at Vivos' business and reputation.

Cease-and-desist letters were sent to Defendants on December 15, 2022, notifying each of their illegal and improper misappropriation of trade secrets, breach of the employment agreements, and notice of litigation should they fail to respond. *See* Exhibits 6, 7. To date, neither have responded and no changes have been made to Koala Plus. Exh. 1 at ¶ 40. Undersigned counsel emailed a copy of the Complaint in this matter, as well as this TRO, just before filing to Singh's counsel, mailed a copy of the Complaint in this matter, as well as this TRO, to Willey, and has hired a process server to serve both Singh and Willey with the Complaint and this Motion. *See* Exhibit 8, ¶ 4(a). Because Vivos has met both elements necessary to obtain an *ex parte* TRO, this Court should issue the TRO without written or oral notice to Singh or Willey.

**B.    This Court should immediately enjoin Singh and Willey.**

Vivos requires an immediate TRO to protect its confidential and proprietary trade secrets, and of acquired trade secrets, from further misappropriation to preserve its reputation, position in the market, and economic relationships, and to prevent Singh from continuing to violate the restrictive covenants.

> A party seeking a temporary restraining order or preliminary injunction must show (1) a substantial likelihood that the movant eventually will prevail on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant

9

outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.

*Kolman,* 2019 WL 1755280, at *1 (quoting *NRC Broad. Inc. v. Cool Radio, LLC*, No. 09-CV-02076-REB, 2009 WL 2965279, at *1 (D. Colo. Sept. 14, 2009)). Vivos has met each element for its trade secret and breach of contract claims. Thus, Vivos asks this Court to grant its Motion.

### 1. Vivos will succeed on the merits of its breach of contract claim.

Vivos is likely to succeed on the merits of its breach of contract claim. Vivos must show (1) existence of a contract; (2) performance by the plaintiff, (3) failure to perform by the defendant; and (3) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

First, Singh has signed an employment agreement with Vivos which included non-competition and non-solicitation "for a period of twenty four (24) months after the Termination Date." Exhibit 3, ¶¶ 4(a) and (b). Further, Singh agreed to the Non-Disclosure and Invention and Copyright Assignment Agreement. *Id.* at ¶¶ 4(b) and 8. Second, Vivos performed under the employment agreements and Singh was employed by Vivos up until his termination.

Finally, Singh has breached the employment agreements by engaging in a competitive business and has engaged in business activities that involve the disclosure and use of Vivos' intellectual property, trade secrets, and confidential information. These breaches cause damages to Vivos. Thus, Vivos will succeed on its breach of contract claim.

### 2. Vivos will succeed on the merits of its trade secret claim.

Vivos is likely to succeed on the merits of its Defend Trade Secrets Act ("DTSA") and Colorado Uniform Trade Secrets Act ("CUTSA") claims. To succeed on its DTSA claim, Vivos must show

> (1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means.

*DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1175 (D. Colo. 2019) (quoting *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018)). Under the CUTSA, Plaintiff must show: "[1] that he or she possessed a valid trade secret, [2] that the trade secret was disclosed or used without consent, and [3] that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Id.* at 1176 (alterations original) (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993)). Vivos can show each element of both its DTSA and CUTSA claims.

First, Vivos' proprietary and confidential information of its devices and treatment methodologies are trade secrets. Both the DTSA and CUTSA define a trade secret similarly. Under the DTSA, a trade secret is:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). Similarly, under the CUTSA, a trade secret is "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula,

improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." C.R.S. § 7-74-102(4). Additionally, just like the DTSA, the CUTSA requires that the trade secret owner keep it confidential. *Id.*

Vivos' design, treatment methodologies, and the basis that formed each, are scientific and technical information, design, process, procedure, improvement, and meet both claims' definitions. These trade secrets are competitively valuable to Vivos because the disclosure of these designs and treatment methodologies would enable competitors to develop the same designs and treatment methodologies, compete with Vivos, and erode Vivos' reputation and value. *See zvelo, Inc. v. Akamai Techs., Inc.*, No. 19-CV-00097-PAB-SKC, 2019 WL 4751809, at *3 (D. Colo. Sept. 30, 2019). ("A trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret."). So Vivos' confidential and proprietary information of its designs, devices, and treatment methodologies are trade secrets under both the DTSA and the CUTSA.

Additionally, as discussed above, Vivos has taken significant steps to keep its proprietary, intellectual property, and scientific data confidential. Exh. 1, ¶ 13. Vivos does not disclose its trade secrets to the public. *Id.* at ¶ 12. Further, Vivos has implemented confidentiality policies with employees, partners, participants, and vendors. *Id.* at ¶¶ 14-23, 25. Thus, Vivos has taken ample steps to protect its designs, intellectual property, inventions, research and data as trade secrets.

Second, Singh acquired the trade secrets during his employment. *Id.* at ¶¶ 33-34. Singh knows or should have known that he was required to maintain the confidentiality of the trade

secrets as it was integrated as part of his employment agreements. Despite this, Singh knew or should have known that he did not have Vivos' consent to use the trade secrets in any way or to disclose the trade secrets to any unauthorized person, including Willey. Yet, Singh disclosed these trade secrets to Willey, and together, they formed a competing business that utilizes Vivos' trade secrets. Willey knew or should have known that Singh did not have Vivos' consent to disclose or use Vivos' trade secrets, and yet, Willey continues to work with Singh to misappropriate these trade secrets for their own benefit. Even after the cease-and-desist letters were issued, notifying both of their illegal and improper acts, both intentionally continue to misappropriate Vivos' trade secrets and have refused to even respond. Singh's and Willey's continued illegal and improper use of Vivos' trade secrets constitutes improper acquisition and use under the DTSA and CUTSA. Thus, Vivos will succeed on its DTSA and CUTSA claims.

### 3. Absent the TRO, Vivos will suffer irreparable harm.

Vivos will suffer irreparable harm if the TRO does not issue. Monetary damages cannot remedy misappropriation of trade secrets. *Panorama Consulting Solutions, LLC v. Armitage,* No. 17-CV-01400-RM, 2017 WL 2929549, at *3 (D. Colo. July 10, 2017) ("The Court finds that a monetary remedy would not be effective in remedying Armitage's potential misappropriation of plaintiff's trade secrets."); *see also Port-a-Pour, Inc. v. Peak Innovations, Inc.*, 49 F. Supp. 3d 841, 872 (D. Colo. 2014) ("when a defendant possesses trade secrets and is in position to use them, harm to the trade secret owner may be presumed."). Each time Singh and Willey promote their business, obtain a new client, provide their platform for craniofacial and dental sleep medicine, and train dentists and medical practitioners through trainings and the residency program, they are improperly and illegally misappropriating Vivos' trade secrets.

Most importantly, Singh and Willey will be providing their first training and offering starting on January 30, 2023. This conference is aimed at the clients and customers of Vivos, as it is the same integrated methodologies of sleep medicine, and they will be sharing what is believed to be Vivos' trade secrets. An injunction is appropriate to prevent Singh from violating the employment agreements and competing with Vivos, and to prevent Singh and Willey from improperly and illegally misappropriating Vivos' trade secrets. Thus, the TRO would protect Vivos from irreparable harm.

### 4. The balance of hardships weighs in Vivos' favor.

Absent the TRO, Singh and Willey will continue to misappropriate Vivos' trade secrets, degrade Vivos' brand and reputation and value of its devices and treatment methodologies, and breaching the restrictive covenants. In contrast, under the TRO, Singh and Willey will suffer no harm because complying with trade secret law is not a hardship. *Armitage,* 2017 WL 2929549, at *3 ("The Court further finds that the balance of hardships weighs in plaintiff's favor because the Court is merely requiring Armitage to comply with the law."). Additionally, Singh cannot be allowed to breach the restrictive covenants for his own personal gain. So, the balance of the hardships weighs sharply in Vivos' favor and this Court should grant the TRO.

### 5. The TRO is not adverse to the public interest.

Last, granting Vivos' TRO would not be adverse to the public interest. "[A] temporary restraining order is not adverse to the public interest. To the contrary, it is in the public interest to protect trade secrets[.]" *Kolman,* 2019 WL 1755280, at *3. Here, the TRO will

14

protect Vivos' trade secret from continued misappropriation and prevent further degradation of Vivos' brand, business, reputation, and value. Therefore, the TRO is in the public interest.

**C.      This Court should not require a bond.**

This Court should not require a bond to issue this TRO. Although Rule 65(c) "is phrased as mandatory, in practice this Court has discretion under this Rule whether to require a bond." *Kolman,* 2019 WL 1755280, at *3. And "[a] trial court has 'wide discretion' under Rule 65(c) in determining whether to require security." *Winnebago Tribe of Neb. v. Stovall,* 341 F.3d 1202, 1206 (10th Cir. 2003). No bond is necessary here because Singh and Willey will suffer no harm if they are enjoined from misappropriating Vivos' trade secrets and breaching the restrictive covenants.

## CONCLUSION

For the foregoing reasons, Vivos respectfully requests an Emergency *Ex Parte* Temporary Restraining Order restraining: Singh and Willey from:

   A. From holding the conference on 1/30/23 through 2/1/23 ;

   B. From using, disclosing, disseminating, distributing, or copying Vivos' trade secrets, including its proprietary and confidential information, including but not limited to Vivos' devices, treatment methodologies, and scientific research and data;

   C. From continuing to operate Koala Plus;

   D. From engaging in a competitive business within the restricted area for 24 months, including the tolling period; and

   E. From soliciting or accepting business from, or otherwise divert from Vivos, any customers or prospective customers for 24 months, including the tolling period.

Dated: January 23, 2023.                    Respectfully submitted,


                                            */s/ Michael A. Freimann*
                                            Michael A. Freimann
                                            Mamie Ling
                                            Armstrong Teasdale LLP
                                            4643 South Ulster Street
                                            Suite 800
                                            Denver, CO 80237
                                            Telephone:  720.200.0676
                                            Facsimile:  720.200.0679
                                            mfreimann@atllp.com
                                            mling@atllp.com

                                            *Attorneys for Plaintiff Vivos Therapeutics, Inc.*

16